IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORENZO VICTORIA, JOSE M. PEREZ, and JAVIER GUTIERREZ, on behalf of themselves and other persons similarly situated, known and unknown | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 9204 |
| ALEX CAR, INC., d/b/a/ CARNICERIA RICARDO AND RICARDO RODRIGUEZ, individually | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Before the court is "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & (6)" (Dkt. No. 7). For the reasons stated herein, the motion is denied.

BACKGROUND

On Dec. 28, 2011, Plaintiffs Lorenzo Victoria, Jose M. Perez, and Javier Gutierrez (collectively, "Plaintiffs") brought this putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). They contend that Defendants Alex Car, Inc., d/b/a Carniceria Ricardo, and Ricardo Rodriguez, individually (collectively, "Defendants") failed to pay minimum wages and overtime as required under federal and state law. (Dkt. No. 1 (Pls.' Compl. ¶ 1.).) Plaintiffs also allege that Defendants retaliated against them because of their participation in a Department of Labor investigation of Defendants' pay practices. (*Id.*)

Plaintiff's complaint, the allegations of which will be accepted as true for the purposes of this motion, alleges that Victoria, Perez, and Gutierrez are current and former employees of

Defendant Alex Car, Inc. (Pls.' Compl. ¶¶ 5,7.) Rodriguez is the president of Alex Car, and has authority to hire and fire employees, supervise their work, and sign company checks. (*Id.* at ¶ 8.)

Defendants operate a combined butcher shop, grocery store, and restaurant under the name Carniceria Ricardo in one location at 4419 W. Diversey Ave. (*Id.* at ¶¶ 11–12.) These businesses share employees, materials, and supplies. (*Id.* at ¶ 12.) Plaintiffs worked as stockers and butchers, and were also assigned other tasks, such as cutting vegetables in the restaurant. (*Id.* at ¶ 13.) During their employment, Defendants refused to pay Plaintiffs and other similarly situated employees minimum wages and overtime. (*Id.*) Defendants failed to keep accurate and complete time records as required by Department of Labor ("DOL") regulations. (*Id.* at ¶¶ 14–15.)[1]

In 2011, the DOL conducted an investigation into Defendants' practices in regard to pay, and interviewed Plaintiffs about their wages. (*Id.* at ¶¶ 17–18.) After that investigation, the Plaintiffs' hours were cut, one was fired, they were denied breaks, and the company's managers told other employees that Plaintiffs had sued the company in order to ostracize them. (*Id.* at ¶ 19.)

Plaintiffs' five-count complaint alleges: violations of the FLSA on behalf of themselves and others similarly situated as to minimum wages and overtime pay (Counts I and III); violations of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") as to minimum wages and overtime pay (Count II and IV); and violations of the anti-retaliation provisions of the FLSA (Count V).

---

[1] Defendants contend as part of their motion to dismiss that Plaintiffs have failed to state a claim for a violation of the record-keeping provisions of the FLSA because no private cause of action exists for record-keeping violations. The Plaintiffs clarified in their response, however, that they are not pursuing such a claim, so the court need not address this issue.

Defendants seek to dismiss the complaint in its entirety, arguing that certain claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because the Plaintiffs signed waiver forms under the supervision of the DOL, and as such their claims for back wages are moot. Additionally, Defendants argue that the complaint is insufficiently pleaded and subject to dismissal under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 8 (Defs.' Mem. in Supp. 1–2.)).

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff[s], accepting as true all well-pleaded facts and drawing all possible inferences in [their] favor." *Cole*, 634 F.3d at 903 (internal citations omitted).

A Rule 12(b)(1) motion to dismiss contends that the court lacks subject matter jurisdiction to hear the claims, in this case because the DOL waivers allegedly mooted Plaintiffs'

3

claims. In ruling on such a motion, the court accepts as true all the allegations in the complaint, but the movant may support its motion with affidavits and other material. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The burden of proof is on the party asserting jurisdiction. *Id.*

ANALYSIS

The court will first address Defendants' waiver argument. It is undisputed that Plaintiffs signed what are known as WH-58 waiver forms from the DOL. (Defs' Mem. in Supp., Ex. B.) The forms were signed by the plaintiffs on Nov. 29 and Nov. 30, 2011, and explicitly cover wages beginning with the workweek ending Dec. 11, 2010, and ending with the workweek ending Sept. 17, 2011. (*Id.*) The forms contain this notice:

NOTICE TO EMPLOYEE UNDER THE FAIR LABOR STANDARDS ACT (FLSA): Your acceptance of this payment of wages and other compensation due under the FLSA based on the findings of the Wage and Hour Division means that you have given up the right you have to bring suit on your own behalf for the payment of such unpaid wages or unpaid overtime compensation for the period of time indicated above and an equal amount in liquidated damages, plus attorney's fees and court costs under Section 16(b) of the FLSA. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received this payment in the amount indicated above of the wages and other compensation due you.

(*Id.*) The FLSA allows for this type of agreement, authorizing the Secretary of the DOL to supervise the payment of unpaid minimum wages or unpaid overtime, and provides that the agreement of any employee to accept such payment constitutes a waiver of the employee's right to sue. 29 U.S.C. § 216(c).

Defendants have put forth an affidavit from Rodriguez, in which he avers that he is the president of Alex Car Inc., doing business as Carniceria Rodriguez. (Defs' Mem. in Supp., Ex. C ("Rodriguez Affidavit" ¶ 1.) In June 2010, the DOL's Wage and Hour Division investigated Carniceria Rodriguez's compliance with minimum wage and overtime laws for the period of

4

May 1, 2008 through May 1, 2010. (*Id.* at ¶ 4.) Subsequently, in November 2011, the DOL investigated Carniceria Rodriguez's compliance with those laws for the period from Dec. 11, 2010, through Sept. 17, 2011. (*Id.* at ¶ 5.) Upon the conclusion of these investigations, the DOL directed Carniceria Ricardo to pay back wages to several employees, including Plaintiffs. (*Id.* at ¶ 6.) The business did so, and all three Plaintiffs agreed to accept payment of back wages, and signed the waiver forms provided by the DOL. (*Id.* at ¶¶ 7–10.)

  Plaintiffs respond that they are predominately Spanish speakers, with limited proficiency in English. (Dkt. No. 11 ("Plaintiffs' Resp. in Opp." 3.).) They contend that Defendants mandated that they sign the WH-58 forms without explaining or translating the contents of that forms, and that no one from Alex Car or the DOL explained to them that they could refuse to sign the forms. No one from the DOL was present when the plaintiffs signed the forms and received their checks. (*Id.*)

  Plaintiffs have included declarations from Victoria, Perez, and Gutierrez[2] to this effect. (Plaintiffs' Resp. in Opp., Ex. A–C.) For example, Victoria states that he is a current employee of Alex Car who has worked for Defendants since 1993. (Plaintiffs' Resp. in Opp., Ex. A. ("Victoria Decl." ¶ 1.).) He is a native Spanish speaker with little proficiency in English. (*Id.* at ¶ 14.) On Nov. 29, 2011, the date he signed the waiver forms, Victoria went into the company's offices to pick up his paycheck. (*Id.* at ¶ 15.) A woman named Guadalupe Ayala told him that he needed to sign a paper in order to get a check. (*Id.*) He was not told what he was signing or given a copy of it. (*Id.* at ¶ 16.) After he signed the form, he was given a check for $2,782.21, but he did not cash it because he wants to pursuit his own lawsuit against the company. (*Id.* at ¶¶

---

[2] Plaintiffs' attorney, Carlos Becerra, translated the declarations.

18–19.) No one translated the form, explained its contents, or told him he could refuse the check. (*Id*. at 20.)

The declarations of Perez and Gutierrez contain similar statements as to Plaintiffs' lack of English proficiency and inability to understand the WH-58 waivers. Perez states that on Nov. 29, 2011, he went to the company's office to pick up his paycheck. (Plaintiffs' Resp. in Opp., Ex. B. ("Perez Decl." ¶ 9.).) A woman named Maria Ayala told him he needed to sign the WH-58 form. (*Id.*) Perez says he was not told what he was signing, but instead was told that he "knew what this was about." (*Id.* at ¶ 10.) No one translated the form, explained what it was regarding, or told him he could refuse the $4,015.01 check he received. (*Id.* at ¶¶ 12–13.) Gutierrez similarly states that he was called into the company's office on Nov. 30, 2011, and Ayala told he needed to sign a paper. (Plaintiffs' Resp. in Opp., Ex. C. ("Gutierrez Decl." ¶ 10.).) He was not told what he was signing, but was told that he "knew what this was about." (*Id.* at ¶ 11.) No one translated the form or explained what it was regarding, and Ayala refused to give him a copy. (*Id.* at ¶¶ 14–15.)

Defendants rely in part on *Carino v. B & M Auto Collisions Ctr.*, No. 03 C 3394, 2004 WL 413299, at *2 (N.D. Ill. Jan. 30, 2004). There, ruling on summary judgment, the court held that a Spanish-speaking employee waived his right to sue under the FLSA by signing a WH-58 waiver form. *Id.* at *2–3. The employee argued that his waiver was ineffectual because he could not understand the form. *Id.* at *2. The court rejected this argument, holding that when someone is asked to sign a document, it is incumbent upon that person to learn what the document says before signing it. *Id.* at *3. (citing *Maksym v. Loesch*, 937 F.2d 1237, 1243 (7th Cir. 1991)).

6

Plaintiffs rely on a recent Middle District of Tennessee case, *Woods v. RHA/Tennessee Grp. Homes, Inc.*, 803 F. Supp. 2d 789, 800 (M.D. Tenn. 2011). In *Woods*, the court held that in order to constitute waiver, the employee's decision to sign a WH-58 form must be "informed and meaningful." *Id.* The *Woods* court relied in part on a Seventh Circuit ruling, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). In *Walton*, the Seventh Circuit held that the mere act of cashing a check, without signing a waiver form, did not constitute a waiver under § 216(c). The *Walton* court noted that in any settlement between private parties, there must be an agreement to compromise the claim, followed by a payment. *Id.* The *Woods* court also cited *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 538 (5th Cir. 1977), and *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007), for the proposition that the key question in determining the validity of a waiver is whether the employee "agreed" to accept the employer's payment in exchange for settlement of the employee's potential claims. *Id.* at 799–800.

With those cases as a backdrop, the *Woods* court held that the relevant inquiry in a FLSA waiver situation is whether the plaintiffs intended to settle their claims, and intent can be vitiated in cases of fraud or duress. 803 F. Supp. 2d at 800. Consequently, the *Woods* court held, no waiver exists when the employer affirmatively misstates material facts regarding the waiver, withholds material facts, or unduly pressures employees to sign the form. *Id.* In *Woods*, there was evidence that the employees were not told they could refuse the payments, and in fact believed they were required to accept them. *Id.* at 801.

This court agrees with the analysis in *Woods*, and finds that factual disputes as to what occurred when Plaintiffs' signed the WH-58 forms preclude this court from finding at this stage

of the case that Plaintiffs' have waived their FLSA claims. The court finds *Carino* distinguishable because it was decided at the summary judgment stage, after greater factual development, and because the record showed that a translator was present when the plaintiff signed the waiver form, but he did not ask the translator any questions. 2004 WL 413299, at *3. The facts here, as alleged by Plaintiffs, are substantially different. No translator was present, and according to Plaintiffs they were told they "needed" to sign the forms. (*See* Victoria Decl. ¶ 15.) The employees in Defendants' office did not explain the forms, but rather, at least in the case of Perez and Gutierrez, told Plaintiffs they "knew what this was about." (*See* Perez Decl. ¶ 10, Gutierrez Decl. ¶ 11.) Until the factual disputes regarding the circumstances surround the signing of the WH-58 forms are resolved, the court cannot determine whether Plaintiffs have waived these claims.

Additionally, the court notes that Plaintiffs' argument that any waiver would apply only to the 40-week period specified on the forms[3] appears well taken. *See Dent*, 502 F.3d at 1145–1146 (finding that waiver limited to time period specified on the WH-58 form). Plaintiffs point out that under 29 U.S.C. § 255(a), there is a two-year statute of limitations for actions to enforce the minimum wage and overtime provisions of the FLSA, and a three-year statute of limitations for willful violations, which Plaintiffs are alleging. (*See* Pls.' Compl. ¶¶ 24, 38.) FLSA claims typically accrue each payday. *See Nehmelman v. Penn Nat'l Gaming, Inc.*, 790 F. Supp. 2d 787, 792 (N.D. Ill. 2011) (collecting cases). So it is possible that even if Plaintiffs' waived some portion of their FLSA claims, they may still have valid overtime and minimum

---

[3] The WH-58 forms specify that the employees received payment for the period beginning with the workweek ending Dec. 11, 2010, and continuing through the workweek ending Sept. 17, 2011.

wage claims. For these reasons, the court declines to dismiss any portion of Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1).

Alternatively, Defendants argue that Plaintiffs have failed to meet the pleading standards required by the Federal Rules. (Dkt. No. 12 ("Defs.' Reply" 7.)) In particular, Defendants take issue with the fact that the complaint does not specify the time period for the alleged pay violations, making it impossible to determine whether the statute of limitations or waiver bars Plaintiffs' claims. (*Id.*) Further, it is impossible to determine the required minimum wages applicable to Plaintiffs, Defendants argue. (*Id.*)

As a preliminary point, the court notes that waiver and the statute of limitations are affirmative defenses under Fed. R. Civ. P. 8(c), and Plaintiffs are not required to anticipate and overcome these defenses in their pleading. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). The court recognizes, however, that there is a split in authority as to the level of detail required in wage claims. *See Nicholson v. UTi Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2010 WL 551551, at *2–3 (S.D. Ill. Feb. 12, 2010) (collecting cases). Nonetheless, the court finds that there is no rule of law that requires Plaintiffs to allege their hourly wage, the dates on which the alleged violations took place, or the specific tasks they performed off the clock. *See id.* at *4 (noting that wage claims are generally simple and do not require detailed factual allegations to render them plausible or to give the defendant fair notice of the claims under *Twombly*); *see also Nehmelman*, 790 F. Supp. 2d at 796–97.

Defendants rely on *Nicholson* in support of their motion because in that case the court, while allowing the FLSA claims for unpaid overtime to stand, dismissed the plaintiff's IMWL claim for a failure to pay minimum wage because he had not pleaded any facts to suggest that his

9

real hourly wage was below the minimum wage. 2010 WL 551551, at *4–5. In so ruling, the *Nicholson* court noted that minimum wage laws apply to the workweek, so as long as an employee's total weekly wage is equal to or greater than his hours worked multiplied by the minimum hourly rate, the employer has satisfied the minimum wage requirement. *Id.* at *4.

Here, Plaintiffs include additional facts in their declarations, which the court may consider in ruling on the motion to dismiss because they are consistent with the allegations in the complaint. *Sterling v. Kazmierczak*, 983 F. Supp. 1186, 1189 (N.D. Ill. 1997). Victoria contends that he worked an average of 60 hours a week prior to December 2011, and earned $400 a week, making his hourly rate $6.67 per hour. (Victoria Decl. ¶ 6.) Additionally, he states that he knew other employees who also earned less than $7.75 an hour in the last three years. (*Id.* at ¶ 7.)[4] Gutierrez similarly states that his average hourly wage was $7.50 an hour. (Gutierrez Decl. ¶ 6.) While Perez states that his average hourly wage over the last three years was $9 an hour (Perez Decl. ¶ 6), it is plausible based on the totality of Plaintiffs' allegations that there were weeks in which his real hourly wages fell below the statutory minimum wage. At any rate, the court finds Plaintiffs' allegations are sufficient to state a plausible claim for relief and put Defendants on notice of the claims against them. The same is true as to Plaintiffs' retaliation claim. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010) (noting that *Twombly* does not require a high level of detail to plausibly state a claim for discrimination). For these reasons, the court denies Defendants' motion to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P 12(b)(6).

---

[4] Illinois' minimum wage was $7.75 for the time period from July 1, 2008, to June 30, 2009. It increased to $8.00 an hour for the time period from July 1, 2009 to June 30, 2010. Since July 1, 2010, the minimum wage has been $8.25. *See* State of Illinois – Department of Labor Hourly Minimum Wage Rates by Year, http://www.state.il.us/agency/idol/News/pdfs/mw.pdf (last visited March 23, 2012).

CONCLUSION

For the foregoing reasons, "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & (6)" (Dkt. No. 7) is denied. Defendants are ordered to answer the complaint by April 10, 2012. Counsel are to confer pursuant to Rule 26(f) and jointly file a Form 52 on or before April 24, 2012. The case is set for status and the entry of a scheduling order at 9:00 a.m. on May 1, 2012.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 29, 2012

11